UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRILL IAKOVLEV,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>ORESTES CRUZ, et al.,<br><br>　　　　　　　Respondents. | Case No. 1:26-cv-00617-JLT-SKO (HC)<br><br>ORDER CONVERTING THE MATTER TO A PRELIMINARY INJUNCTION AND GRANTING THE PRELIMINARY INJUNCTION[1]; AND REFERRING THE MATTER TO THE ASSIGNED MAGISTRATE<br><br>(Doc. 9) |

## I.　　INTRODUCTION

Before the Court for decision is Kirill Iakovlev's request for a temporary restraining order (Doc. 9), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) Having evaluated the TRO request, Respondents' opposition, (Doc. 11) and Petitioner's reply (Doc. 12), the Court converts the matter into a motion for preliminary injunction, **GRANTS** that motion, and **REFERS** the matter to the assigned magistrate judge for a determination on the merits.

## II.　　FACTUAL & PROCEDURAL BACKGROUND

Petitioner is a 31-year-old citizen of Russia who entered the United States without inspection on or around October 7, 2022, at which time he was apprehended and taken into

---

[1] Because the standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction, *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), the Court **GRANTS** a preliminary injunction.

1  custody by the Department of Homeland Security ("DHS"). (Doc. 9 at 2.) Petitioner was then
2  released from custody on parole with conditions with an I-94. (*Id.*)

3      Since his release from detention, Petitioner moved to Fresno, California. (*Id.*) He has no
4  criminal history, and he asserts he complied with all in-person reporting requirements as
5  required by his release. (*Id.*) Around December 20, 2025, Petitioner was arrested when he
6  reported to a routine ICE check-in. (*Id.*) He is currently being detained at Golden State Annex
7  Facility in McFarland, California. (*Id.*)[2]

8      The government opposes the issuance of preliminary injunctive relief and maintains that
9  Petitioner's detention is "mandatory" under expedited removal procedures set forth at 8 U.S.C.
10 § 1225(b)(2). (*See generally* Doc. 11.)

11 **III.    LEGAL STANDARD**

12     The standard governing the issuing of a TRO is "substantially identical" to the standard
13 for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240
14 F.3d 832, 839 n. 7 (9th Cir. 2001). A party seeking a preliminary injunction must establish: (1)
15 they are "likely to succeed on the merits" of their claims, (2) they are "likely to suffer irreparable
16 harm in the absence of a preliminary injunction," (3) "the balance of equities tips in [their]
17 favor" and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555
18 U.S. 7, 20 (2008); *see also Ctr. For Food Safety v. Vilsack,* 636 F.3d 1166, 1172 (9th Cir. 2011)
19 ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in
20 order to obtain a preliminary injunction.'").

21     The party seeking a preliminary injunction has the burden to "make a showing on all four
22 prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v.*
23 *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)
24 (holding that the moving party has "the burden of persuasion"); *see also Hecox v. Little*, 104
25 F.4th 1061, 1073 (9th Cir. 2023). The Court may weigh the request for a preliminary injunction
26 with a sliding-scale approach. *Alliance*, at 1135 (9th Cir. 2011). Accordingly, a stronger showing
27
28 [2] Prior to his detention, Petitioner did not attend any hearings before EOIR because he did not receive a Notice to Appear ("NTA") until December 20, 2025. (Doc. 9 at 2.)

2

1  on the balance of hardships may support the issuance of a preliminary injunction where there are
2  "serious questions on the merits … so long as the plaintiff also shows that there is a likelihood of
3  irreparable injury, and that the injunction is in the public interest." *Id*.  Finally, "a preliminary
4  injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

### IV.     ANALYSIS

**A.     Likelihood of Success on the Merits**

This first factor "is the most important" under *Winter*, and "is especially important when a plaintiff alleges a constitutional violation and injury." *Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023). Petitioner argues he is likely to succeed on his claim that Respondents violated his Fifth Amendment Due Process rights when he was detained without notice or provided a custody hearing before a neutral arbiter. (Doc. 9-2 at 4-9.)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Session, 872 F.3d 976*, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. *Id*. at 693–94. "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." *Garro Pinchi v. Noem*, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Other courts, including this Court, have held similarly. *J.E.H.G. v. Chestnut*, No. 1:25-CV-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)).

In analyzing procedural due process claims such as this one, courts must first determine whether a protected liberty interest exists under the Due Process Clause. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460 (1989.) If a protected liberty interest is found to

1  exist, the court then must examine whether the procedures necessary to ensure that any
2  deprivation of that protected liberty interest accords with the Constitution. (*Id.*) To the extent
3  that Respondents substantively address Petitioner's due process argument, they deploy a blanket
4  assertion that Petitioner is an "applicant for admission" subject to mandatory detention under 8
5  U.S.C. § 1225(b)(2)(A) of the INA and therefore categorically ineligible for a bond hearing.
6  (Doc. 11 at 1-2.)

7  Respondents also rely on *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212
8  (1953) for the proposition that the Fifth Amendment does not apply to Petitioner. (*Id*. at 8.) This
9  Court has rejected this exact argument on numerous occasions. *See e.g., M.R.R. v. Chestnut*, No.
10  1:25-CV-01517-JLT-SKO, 2025 WL 3265446, at 10* (E.D. Cal. Nov. 24, 2025).

11  Although Petitioner's claim is ultimately constitutional in nature, it turns on whether
12  section 1225(b) or section 1226(a) justify Petitioner's re-detention. Courts nationwide, including
13  this one, have overwhelmingly rejected Respondents' new legal position and found the DHS
14  policy unlawful.  *See, e.g.*, *Ortiz Donis v. Chestnut*, 1:25-CV-01228-JLT, 2025 WL 2879514 at
15  *3–6 (E.D. Cal. Oct. 9, 2025); *see also*, *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT, 2025 WL
16  3265446 (E.D. Cal. Nov. 24, 2025); *Hortua v. Chestnut*, et al., No. 1:25-cv-01670-TLN-JDP,
17  2025 WL 3525916 (E.D. Cal. Dec. 9, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582
18  (LAK), —— F.Supp.3d ——, ——, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025)
19  (estimating over 350 cases ruled the DHS policy improper across 160 different judges sitting in
20  about 50 different courts nationwide); *Mirley Adriana Bautista Pico, et al. v. Kristi Noem, et al.*,
21  No. 25-CV-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (collecting cases);
22  *Armando Modesto Estrada-Samayoa v. Orestes Cruz, et al.*, No. 1:25-CV-01565-EFB (HC),
23  2025 WL 3268280, at *4 (E.D. Cal. Nov. 24, 2025) (collecting cases).

24  Even assuming Respondents are correct that § 1225(b) is the applicable detention
25  authority for all "applicants for admission," Respondents fail to meaningfully contend with the
26  liberty interest created by the fact that the Petitioner in this case was released on recognizance in
27  October of 2022, before the current manifestation of this interpretation. Thus, the Court must
28  evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to

4

1  determine whether the procedures (or lack thereof) that have been applied to Petitioner are

2  sufficient to protect the liberty interest at issue. *Pinchi*, 2025 WL 2084921 at *3. In *Mathews*, the

3  Court determined the following:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

During his time on parole, Petitioner developed a substantial private interest in being out of custody and his detention denies him that liberty interest. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

Respondents offer little to rebut Petitioner's due process claim and do not provide any justification for detaining Petitioner. As such, nothing in the record suggests a change in circumstance material to the question of whether Petitioner is a danger to public safety or a flight risk. It is clear to this Court, despite Respondents arguments otherwise, that Petitioner established his liberty interest.

Finally, as to the third *Mathews* factor, this Court concludes that the government's interest in detaining Petitioner without proper process is slight. "Since respondents did not engage with Petitioner's due process arguments, they have not provided the court with any information regarding the burden on the government." *Rocha Chavarria,* 2025 WL 3533606, at *4. In sum, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits of his due process claim.

### B. Remaining Preliminary Injunction Factors

The remaining preliminary injunction factors—irreparable harm, the balance of equities, and the public interest—decidedly weigh in favor of Petitioner. "[I]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976));

1   *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm."). By successfully demonstrating that Respondents lack a basis to detain him, Petitioner has succeeded in showing irreparable harm.

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds there is no equitable reason that would tip the balance in the Government's favor. Though the government has a compelling interest in enforcing the immigration laws, granting relief to Petitioner will not seriously impinge its ability to do so. The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Moreover, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (quoting *Jorge M.F. v. Wilkinson*, No, 21-cv-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)). In sum, the last two *Winter* factors also weigh in Petitioner's favor.

**V.    CONCLUSION AND ORDER**

1. Petitioner's Motion for Temporary Restraining Order (Doc. 9) is converted to a Motion for Preliminary Injunction, and it is **GRANTED.**

2. Because the government has no evidence that Petitioner poses a risk of flight or poses a danger to the community, Petitioner **SHALL** be released **IMMEDIATELY** from DHS custody. DHS **SHALL NOT** impose any additional restrictions on her, such as electronic monitoring, unless that is determined to be necessary at a later custody hearing.

3. Respondents are **PERMANENTLY ENJOINED AND RESTRAINED** from rearresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice[3] of at least seven days before a pre-deprivation

---

[3] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing

1  hearing at which the government will bear the burden of demonstrating by clear and convincing
2  evidence that he is likely to flee or pose a danger to the community if not arrested
3     4.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. See
4  *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011). Courts regularly waive security in cases
5  like this one. See, e.g., *Zakzouk v. Becerra*, No. 25-cv-06254, 2025 WL 2899220, at *8 (N.D.
6  Cal. Oct. 10, 2025).
7     5.  The parties are directed to meet and confer no later than 14 days from the date of
8  the entry of this order, and, if possible, submit a joint proposed briefing schedule discussing the
9  abeyance of further proceedings on the merits pending the 9th Circuit Appeal of *Rodriguez*
10 *Vazquez v. Bostock,* 779 F.Supp.3d 1239 (W.D. Wash. 2025). If the parties are unable to agree to
11 a joint proposed briefing schedule, the Court will rule on the request.
12    6.  The government may file a further brief on the merits of the habeas petition
13 within 45 days. Alternatively, as soon as it can within that 30-day period, the government may
14 file a notice that it does not intend to file further briefing. If the government files an additional
15 brief, Petitioner may file a further brief within 30 days thereafter.
16    5.  The matter is referred to the assigned magistrate judge for consideration of the
17 merits of the petition as quickly as possible.

IT IS SO ORDERED.

Dated: **February 10, 2026**                    _____
                                                 UNITED STATES DISTRICT JUDGE

---

consistent with the requirements set forth here, **SHALL** be provided within seven days of the arrest.

7